UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SUNLIGHT LANDS LLC,

    Plaintiff,

  v.                            Case No. 2:24-CV-267-JES-KCD

WESTCHESTER SURPLUS LINES
INSURANCE COMPANY,

    Defendant.
_____/

# ORDER

Before the Court is Plaintiff Sunlight Lands LLC's Motion to Compel Appraisal (Doc. 36), and Defendant Westchester Surplus Lines Insurance Company's response (Doc. 39).[1] Because the parties dispute whether Sunlight satisfied the post-loss conditions needed to order appraisal, the Court held an evidentiary hearing. *See Treasure Cay Condo. Ass'n, Inc. v. Frontline Ins. Unlimited Co.*, No. 0:19-CV-10211-JLK, 2020 WL 13687543, at *4 (S.D. Fla. July 21, 2020) ("[W]hen an insurer reasonably disputes whether an insured has sufficiently complied with a policy's post-loss conditions so as to trigger the policy's appraisal provision, a question of fact is created that must be resolved by the trial court before the trial court may compel appraisal."). Based on the evidence and arguments presented, Sunlight's motion is **GRANTED**.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

## I. Background

Sunlight owns a duplex in Cape Coral that Westchester insured. Following Hurricane Ian, Sunlight hired a public adjuster and submitted a claim for property damage. (*See* Doc. 67-3.) Westchester inspected the property (three times) and corresponded with Sunlight's public adjuster over several months. Westchester eventually accepted the claim and assessed the covered damage at $59,274.11. (Doc. 67-9 at 2.)

In response, Sunlight submitted an estimate from its public adjuster totaling $218,956.14. (Doc. 68-3.) Sunlight also "invoke[d] a demand for appraisal of the entire loss for all coverages under the policy." (*Id.* at 2.)

Although Westchester reported that the claim was being "assigned to an appraiser," it later reversed course. (Doc. 68-6.) In a letter to Sunlight, Westchester explained that appraisal was premature because "the disagreement on the amount of loss is unclear." (Doc. 67-5 at 2.) To "assist in its analysis and review of the new estimate," Westchester asked Sunlight to provide more documentation. (*Id.* at 4.)

In the meantime, Sunlight filed a complaint against Westchester with the Florida Department of Financial Services ("DFS"). That investigation revealed a different estimate that Sunlight had submitted from a general contractor for $124,800. (Doc. 68-9.) In the DFS case, Sunlight (apparently

without consulting the public adjuster) requested "to settle and close th[e] claim . . . in the amount of $124,800." (*Id.* at 3.)

Given the contrasting estimates, Westchester asked Sunlight's public adjuster to clarify the scope of the claim. He responded that the "GC estimate . . . wasn't addressing a lot of items such as the roof." (Doc. 68-10 at 6.) He also confirmed, "I am not depending my scope on that estimate." (*Id.*)

Despite what looks like a passable response from Sunlight's public adjuster, Westchester again sought clarification "on how [Sunlight] intends to proceed with its claim." (Doc. 68-10 at 2.) Westchester demanded "a response withdrawing either [the public adjuster] estimate or the [GC estimate] and confirming which estimate represents the scope of [Sunlight's] claim." (*Id.*)

By this point, frustrations had boiled over. Sunlight's public adjuster responded with many exclamation points and accusations of "kick[ing] the can down the road." (Doc. 67-16 at 1.) Setting those aside, the public adjuster also attached several invoices and receipts in response to Westchester's earlier demand for documents. These records included two roofing invoices and an estimate for soffit repair. (*Id.*)

Unhappy with the delay (over a year had passed since the storm), Sunlight hired an attorney and filed suit. It has since renewed the demand for appraisal, which is now before the Court. (Doc. 36.) Under the parties' policy:

3

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

(Doc. 67-1 at 38.)[2]

The policy also imposes certain post-loss duties on Sunlight that must occur before appraisal. Pertinent here:

> 3. Duties In The Event Of Loss Or Damage
>
> a. You must see that the following are done in the event of loss of damage to Covered Property:
>
> . . .
>
> (8) Cooperate with us in the investigation or settlement of the claim.

(*Id.* at 38-39.)

Westchester has acknowledged there is a covered loss, made some payment to Sunlight, collected documents, and inspected the property. Still, it argues appraisal is premature because Sunlight "did not comply with its post-loss obligations under the Policy." (Doc. 39 at 1.) According to Westchester,

---

[2] For ease of reference, the Court cites the page numbers generated by its electronic filing system.

4

there has not been sufficient cooperation. Specifically, it "has not been afforded a fair and reasonable opportunity to evaluate [Sunlight's] many divergent estimates." (*Id.*) The policy contains several other post-loss conditions. (*See* Doc. 67-1 at 38.) But any argument about them was either withdrawn or conceded at the hearing. The only remaining issue is whether Sunlight sufficiently cooperated with the investigation to trigger appraisal.

## II. Discussion

When an insurance policy contains an appraisal provision, like here, the right to appraisal is not permissive but mandatory. So once a demand for appraisal is made, "neither party has the right to deny that demand." *United Cmty. Ins. Co. v. Lewis*, 642 So. 2d 59, 60 (Fla. Dist. Ct. App. 1994); *see also Cincinnati Ins. Co. v. Cannon Ranch Partners, Inc.*, 162 So. 3d 140, 143 (Fla. Dist. Ct. App. 2014) ("[W]hen the insurer admits that there is a covered loss, any dispute on the amount of loss suffered is appropriate for appraisal.").

Before a court can compel appraisal, it must determine that the demand is ripe. *Gulfside, Inc. v. Lexington Ins. Co.*, No. 2:22-CV-47-SPC-NPM, 2023 WL 2743148, at *2 (M.D. Fla. Mar. 31, 2023). Appraisal "is ripe where postloss conditions are met, the insurer has had a reasonable opportunity to investigate and adjust the claim, and there is a disagreement regarding the value of the property or the amount of loss." *Heritage Prop. & Cas. Ins. Co. v. Williams*, 338 So. 3d 1119, 1121 (Fla. Dist. Ct. App. 2022). "The law in this district is clear

and has been for nearly twenty years: the party seeking appraisal must comply with all post-loss obligations before the right to appraisal can be invoked[.]" *Vintage Bay Condo. Ass'n, Inc. v. Lexington Ins. Co.*, No. 2:18-CV-729-FTM-99CM, 2019 WL 211433, at *3 (M.D. Fla. Jan. 16, 2019). "Thus, if a policy requires the insured to show the insurer the damaged property, make a written demand, or provide the insurer with requested documents, the insured must first satisfy these policy prerequisites before it may demand appraisal." *Seagate Towers Condo. Ass'n, Inc. v. QBE Ins. Corp.*, No. 10-CV-81223, 2012 WL 12868714, at *2 (S.D. Fla. Nov. 19, 2012).

As mentioned, Westchester's remaining argument focuses on cooperation. It claims Sunlight "refused to provide the requested clarification about the . . . scope of its claim." (Doc. 39 at 2.) And this "prevented Westchester from evaluating [Sunlight's] many divergent estimates." (*Id.* at 3.)

The Court is not convinced. Although the correspondence from Sunlight's public adjuster is not a model of clarity, it sufficiently informed Westchester that his estimate (not the GC estimate) was the basis for the claim. And the other documents (such as the roofing invoices) were supplemental records that covered damages already included in the estimate. While the parties' interactions here leave much to be desired, the Court is satisfied that Sunlight sufficiently complied with the policy. *See Sunshine State Ins. Co. v. Corridori*, 28 So. 3d 129, 131 (Fla. Dist. Ct. App. 2010) ("[W]here the insured cooperates

to some degree or provides an explanation for its noncompliance, a fact question is presented regarding the necessity or sufficiency of compliance.").

But even viewing the record as Westchester suggests, it still loses. This is because no matter what cooperation was lacking during the adjustment process, Sunlight has since clarified the scope of its claim in no uncertain terms—"Going forward, [Sunlight] intends to utilize the one and only estimate prepared by its public adjuster." (Doc. 42 at 6.) The remaining documents are merely records that Westchester asked for, or further documentation of the damages reflected in the public adjuster's estimate. If an insured provides whatever the insurer might have wanted "post-loss and pre-suit" during the litigation, such as through discovery, then a trial court commits no error when it orders the insurer to "submit to an appraisal." *Scottsdale Ins. Co. v. Univ. at 107th Ave., Inc.*, 827 So. 2d 1016, 1016-17 (Fla. Dist. Ct. App. 2002). Because Sunlight remedied any deficiency in its cooperation through discovery and its stipulations, "this Court may order appraisal." *Castillo at Tiburon Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-CV-468-SPC-MRM, 2021 WL 4438370, at *5 (M.D. Fla. Sept. 28, 2021); *see also Triton Renovation, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-CV-432-JLB-NPM, 2021 WL 2291363, at *5 (M.D. Fla. June 4, 2021) ("[A]n insured may remedy any unfilled post-loss obligations after filing suit[.]").

When an "insurer has not wholly denied coverage" and there has been substantial compliance with the post-loss conditions, as here, "appraisal is appropriate." *Merrick Pres. Condo. Ass'n, Inc. v. Cypress Prop. & Cas. Ins. Co.*, 315 So. 3d 45, 50 (Fla. Dist. Ct. App. 2021). Accordingly, it is now **ORDERED**:

1. Sunlight's Motion to Compel Appraisal (Doc. 36) is **GRANTED**;

2. To facilitate appraisal and avoid unnecessary judicial labor while that process proceeds, the case is **STAYED** pending appraisal, and the Clerk must add a stay flag to the file and **ADMINISTRATIVELY CLOSE THE CASE**. All deadlines and events in the Scheduling Order (Doc. 27) are suspended.

3. The parties are **DIRECTED** to file a joint report on the status of appraisal on or before January 31, 2025, and every 90 days after until appraisal has ended.

4. Within 15 days of a signed appraisal award, the parties are **DIRECTED** to jointly notify the Court of (a) what issues, if any, remain for the Court to resolve; (b) whether the stay needs to be lifted; and (c) how this action should proceed, if at all.

**ENTERED** in Fort Myers, Florida on November 21, 2024.

Kyle C. Dudek
United States Magistrate Judge